NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARCELLO POOLE,<br><br>    Plaintiff,<br><br>    v.<br><br>MERCER COUNTY CORRECTION CENTER, et. al,<br><br>    Defendants. | CIVIL ACTION NO. 11-3730 (MLC)<br><br>**MEMORANDUM OPINION** |

**COOPER, District Judge**

      Pro se Plaintiff, Marcello Poole ("Plaintiff"), commenced this action against Defendants, Mercer County Correction Center ("MCCC"), Warden Charles Ellis ("Warden Ellis"), and Correction Officers K. Jones, C. Klosinski, and John Doe (subsequently identified as P. Foy) ("County Defendants"), alleging, inter alia, under 42 U.S.C. § 1983 that the County Defendants and Warden Ellis violated his Eighth Amendment rights. (See dkt. entry no. 35, Br. in Opp'n, Certification in Opp'n at ¶ 1.) Warden Ellis and the County Defendants moved for summary judgment in their favor and against Plaintiff pursuant to Federal Rule of Civil Procedure ("Rule") 56. (See dkt. entry no. 30, Notice of Mot.; dkt. entry no. 23-1, Defs.' Mot. for Summ. J.) For the reasons that follow, the motion will be granted.

**I.    BACKGROUND**

      The undisputed facts based on the summary judgment record are as follows. Plaintiff is incarcerated at the MCCC on B-Pod. Plaintiff states that on January 1, 2010, he was attacked by eight M.S. 13 gang members on B-Pod. The attack began with punches exchanged between

Inmates Larry Desmond and Abby Escobar-Servellon at the bottom of a staircase. (See dkt. entry no. 23-4, Klosinski Report to Warden at 1.) As other inmates joined the altercation, Inmate Jeffery DeLeon stabbed Inmate Desmond in the back using a handmade weapon, composed of metal wiring from smoke detector cages and bed frame supports. (See dkt. entry no. 23-6, Mercer Cty. Internal Report at 2–5.) Plaintiff engaged in the altercation, and during his involvement, Inmate DeLeon used the same weapon to stab Plaintiff in the back. (See id.)

Once the Correction Officers ("COs") subdued the inmates engaged in the fight, those with injuries, including Plaintiff, were taken to receive medical treatment. Specifically, MCCC personnel transported Plaintiff to the hospital, where Plaintiff received stitches to close the stab wound, and he was released back to MCCC in the early morning hours of January 2, 2010. (See dkt. entry no. 23-5, Pl.'s Medical R.)

Defendants Klosinski and Foy witnessed the assault by the gang members, as they were on duty on B-Pod at the time of the attack. (See dkt. entry no. 40-2, Certification of Foy at 1; dkt. entry no. 40-4, Certification of Klosinski at 1.) Plaintiff contends that these COs waited "approximately five minutes" before calling for assistance to break up the fight. (See Br. in Opp'n, Certification in Opp'n at ¶ 9.) Defendant Klosinski states that he immediately called a "Code 3" upon witnessing two inmates exchanging punches. (See dkt. entry no. 40-1, Certification of Warden Ellis at 2; dkt. entry no. 40-3, Certification of Jones at 1; Certification of Klosinski at 1; Certification of Foy at 1.)[1]

---

[1] A Code 3 is called whenever a fight between inmates occurs and it signals to other COs that they need to provide reinforcements to the situation in order to end the altercation.

2

The Court dismissed Plaintiff's claims regarding false disciplinary charges and denial of access to the courts in February 2012. (See dkt. entry no. 7, 2-29-12 Order; dkt. entry no. 6, Mem. Op. at 8.) The Court also dismissed all of Plaintiff's claims against MCCC. (See id.) The County Defendants and Warden Ellis now move for summary judgment as to Plaintiff's remaining claims. (See Notice of Mot.; Defs.' Mot. for Summ. J.)

## II.   SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56, which provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 331 (1986). In response, "the nonmoving party [must] go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) and Celotex Corp., 477 U.S. at 322-23). Summary judgment is "proper if, viewing the record in the light most favorable to the non-moving party and drawing all inferences in that party's favor, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." United States ex rel. Kosenske v. Carlisle HMA, Inc.,

3

554 F.3d 88, 94 (3d Cir. 2009). Further, pro se pleadings are to be construed liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

### III.  LEGAL PRINCIPLES AND DISCUSSION

Plaintiff's remaining claims invoke liability under the Eighth Amendment. The Eighth Amendment "imposes a general duty on prison officials to protect inmates from violence by other prisoners." Nifas v. Coleman, 528 Fed.Appx. 132, 135 (3d Cir. 2013). Plaintiff states that Warden Ellis failed to supervise the County Defendants, who in turn failed to protect Plaintiff from known gang members in his living space, leading to his attack. These statements comprise Plaintiff's Eighth Amendment claim.

#### A.  Failure to Protect

In order for a prison official to be found liable under the Eighth Amendment for failure to protect an inmate, the inmate must demonstrate that "the official subjectively knew of and chose to disregard a substantial risk of serious harm to an inmate's health or safety." Okey v. Strebig, 531 Fed.Appx. 212, 214 (3d Cir. 2013); Farmer v. Brennan, 511 U.S. 825, 837 (1994). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. Instead, liability necessitates a showing that officers acted with deliberate indifference to a substantial risk of harm: they must have known of an excessive risk to an inmate's health or safety and failed to address the danger. See Shuman v. Sabol, No. 09-2490, 2011 WL 4343780, at *7 n.5 (D.N.J. Sept. 14, 2011), appeal dismissed, No. 11-3914, slip. op. (3d Cir. Feb. 29, 2012); Nifas, 528 Fed.Appx. at 135; Farmer, 511 U.S. at 837. The complaint cites only two

4

allegations in this regard: (1) that MCCC housed Plaintiff with known gang members, and (2) that County Defendants waited five minutes after the fight began to intervene.

### 1. Alleged Failure to Anticipate Dangers in Housing

Warden Ellis and the County Defendants contend that with regard to the housing allegation Plaintiff merely asserts that he "had been housed with predatory gang member [sic], and at all times relevant to this action the defendant's [sic] Klosinski, Jones, Ellis, and . . . Foy; were fully aware of the substantial risk of seriour [sic] harm to non-gang members such as the plaintiff." (See Br. in Opp'n at 6.) Plaintiff states that "pre-existing attacks [occurred] on inmates that were non-gang member [sic] by gang members, who were being housed together." (See id. at 16.) Aside from these bare allegations, Plaintiff presents no evidence in support of his claim that Warden Ellis and the County Defendants failed to protect him by housing him under dangerous conditions.

Plaintiff relies heavily on a comparison to the plaintiff in Farmer to bolster his claim of failure to protect in his housing arrangement. (See Br. in Opp'n at 5–6.) The Farmer plaintiff was a transsexual prisoner, listed as such by the Bureau of Prisons. Because the prisoner in Farmer, born male, had not undergone a permanent sex reassignment, he was placed in the prison's general male population and was subsequently beaten and raped by another inmate. Unlike the prisoner in Farmer, Warden Ellis and the County Defendants argue that the Plaintiff presented no evidence of facts that would have put MCCC prison officials on notice of danger to Plaintiff. Plaintiff has not presented evidence of a particular trait, be it his race, gender, or gang affiliation, or any other factor, such as fearful comments to COs, or detailing a pattern of attacks

5

by gang members against non-gang member inmates that gravely endangered Plaintiff's health or safety during his incarceration. Thus, the Farmer plaintiff is distinguished from Plaintiff here.

Prison staff even offered Plaintiff the opportunity to be placed in protective custody after the attack. (See Certification of Warden Ellis at 2.) Given the opportunity to be housed away from the gang members Plaintiff claims he feared, he **turned down** this offer on two occasions, both verbally and in writing. (See id.) Thus, we find that Plaintiff has failed to present any evidence with regard to the housing allegation that the County Defendants subjectively knew of and disregarded a substantial risk of harm to Plaintiff's well-being in his housing conditions.

### 2. Alleged Failure to Intervene in the Attack

Plaintiff's second allegation states that the County Defendants failed to protect him by witnessing the attack "for approximately five minutes before calling for emergency assistance," which led to Plaintiff sustaining a serious injury. (See Br. in Opp'n., Certification in Opp'n at ¶ 9.) While the County Defendants' reports directly contravene Plaintiff's timeline contention, Warden Ellis and the County Defendants correctly contend that the bare allegation that the COs waited five minutes to call for help falls short of producing evidence that the COs failed to take reasonable steps to prevent harm from occurring.

An official can rebut the contention of failure to protect "either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001). While Plaintiff did suffer a stab wound requiring stitches, Plaintiff only states that the COs on the scene "had a minimum duty (and the

6

opportunity) to attempt to prevent additional injury, as well as to intervene once Deleon [sic] set upon Poole." (See Br. in Opp'n at 8.) Plaintiff also states that the COs waited "approximately five minutes" to intervene. (See Br. in Opp'n, Certification in Opp'n at ¶ 9.) Klosinski and Foy, the COs on the scene, both stated in their reports that they called a Code 3 immediately upon witnessing Inmates Escobar-Servellon and Desmond exchange punches, before Plaintiff joined the fracas. (See Certification of Klosinski at 1; Certification of Foy at 1.) After the Code 3 was called, they tried to break up the fight. (See id.)

The Court finds that the evidence, even reviewed in the light most favorable to Plaintiff, shows that the County Defendants' actions in promptly calling a Code 3, responding to break up the fight, and ensuring that injured inmates received medical care met the constitutional duty to protect of Warden Ellis and the County Defendants. Adding support to the Court's conclusion is the case of Bracey v. Harlow, where an inmate in a Pennsylvania state corrections facility brought a failure to protect claim against the COs after he was assaulted by another inmate with a weapon. See Bracey v. Harlow, No. 11–4, 2013 WL 5331978 (W.D. Pa. Sept. 23, 2013), aff'd, No. 13-4203, 2014 WL 2965655 (3d Cir. July 2, 2014). The plaintiff in Bracey alleged the COs failed to intervene in the assault for four minutes. See id. at *12. Within fourteen minutes, however, the plaintiff in Bracey was transported to the medical department for treatment. See id. As a result, the district court in Bracey held, and the Third Circuit affirmed, that because the attacker wielded a weapon, the incident was "quelled rapidly with the use of several officers," and plaintiff was immediately provided medical treatment, the plaintiff failed to present a cognizable failure to protect claim. See id.; see also Shelton v. Bledsoe, No. 11-1618, 2012 WL

7

5267034, at *6 (M.D. Pa. Oct. 24, 2012) (holding that a twelve minute response to an inmate attack fails to support an Eighth Amendment claim of deliberate indifference to inmate safety, as the matter only presents a disagreement as to the timing of the response and does not serve as evidence of wanton disregard).

The Court comes to the same conclusion here. Plaintiff's response in opposition fails to provide any additional evidence to create a genuine issue of fact appropriate for trial. (See Br. in Opp'n, Certification in Opp'n.) See Shuman, 2011 WL 4343780, at *7–9 (granting summary judgment to the defendant, a corrections officer who called a Code 3 when the plaintiff was attacked by another inmate in MCCC, as the plaintiff failed to raise any evidence that the corrections officer disregarded his safety). Plaintiff presents no evidence of how he knew the response took five minutes, or how or when the Code 3 was called, or how order was restored by one or more responding officers. Thus, the motion for summary judgment will be granted as to this issue.

### B.   Failure to Supervise

Plaintiff asserts a failure to supervise claim against Warden Ellis. (See Br. in Opp'n, Certification in Opp'n at ¶ 1, 4.) To prevail on a claim of failure to supervise, Plaintiff must demonstrate that the supervisor had "personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207. This level of involvement can be "shown through allegations of personal direction or of actual knowledge and acquiescence," so long as these allegations are "made with appropriate particularity." Id.

Warden Ellis and the County Defendants argue that Plaintiff's contentions against Warden Ellis are insufficient to establish personal direction or actual knowledge and acquiescence. The Court agrees. Plaintiff's statements supporting his claim of failure to supervise center on the policymaking authority possessed by Warden Ellis. In order for liability to attach under such a theory, evidence must show that such policymakers, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused constitutional harm." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989).

Plaintiff, however, fails to present any facts that would suggest that MCCC's existing custom and practice created unreasonable risks of harm to inmates, that Warden Ellis knew of such risks and displayed deliberate indifference to the risks, and that, as a result, Plaintiff's injury stemmed from Warden Ellis's failure to employ certain procedures to protect inmates from the harm. See Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). In his certification, Warden Ellis explains: the way inmates are housed at MCCC; the procedures for handling inmate complaints regarding housing due to safety concerns; and that he had no knowledge of a risk to Plaintiff prior to the attack and played no direct role in the response to the altercation on January 1, 2010. (See Certification of Warden Ellis at 2.) As Warden Ellis and the County Defendants assert, Plaintiff presents no evidence to controvert the certification of Warden Ellis.

Plaintiff specifically brings this action against Warden Ellis in his official capacity only. (See Compl. at 1.) As such, the Court notes that Warden Ellis is entitled to qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability

for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Plaintiff merely states that Warden Ellis was "fully aware that . . . [MCCC], housed dangerous and violent gang members." (See Br. in Opp'n at 16.) Warden Ellis and the County Defendants contend that the only evidence of such training and supervision, however, rests in the certifications submitted by the COs regarding their response to the attack on January 1, 2010. All of the COs involved reported that a Correction Officer called a Code 3, and then COs responded to the call, helped to break up the altercation, and removed the weapons. Injured inmates received medical treatment. (See Certification of Warden Ellis at 2; Certification of Klosinski at 1; Certification of Foy at 1; Certification of Jones at 1.) The Court agrees with Warden Ellis and the County Defendants that Plaintiff has raised no evidence showing that Warden Ellis could have thought that instructing COs to respond to an altercation in such a manner was unlawful conduct. Thus, Warden Ellis is entitled to qualified immunity. The motion for summary judgment will be granted as to this issue.

### A.  CONCLUSION

For these reasons, the motion for summary judgment will be granted. The Court will issue an appropriate Order and Judgment.

 s/ Mary L. Cooper            
**MARY L. COOPER**
United States District Judge

Dated: September 23, 2014